**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 22-2** |
| **v.** | * | **SECTION: "G"** |
| **ERNESTINE ANDERSON-TRAHAN** | * | |
| | * | * | * |

**MOTION IN LIMINE AND NOTICE OF INTENT TO**
**INTRODUCE INTRINSIC AND RULE 404(b) EVIDENCE AND**
**MEMORANDUM IN SUPPORT**

**NOW INTO COURT** comes the United States of America, by undersigned counsel, and files this notice of intent to introduce evidence of other crimes, wrongs, and acts committed by the Defendant Ernestine Anderson-Trahan.  Defendant has been charged with filing false tax returns, in violation of 26 U.S.C. § 7206(1), by failing to report all the income she made from her legal practice and from officiating weddings.  Defendant may argue that the failure to include certain income was not willful, but resulted from a mistake, negligence, or inadvertence.  The United States seeks to introduce (1) evidence showing Defendant properly reporting her legal and wedding income in other tax years, (2) evidence that Defendant amended her tax returns after being questioned by the Judiciary Commission of Louisiana, (3) evidence regarding statements made by Defendant in financial disclosures and amendments to those financial disclosures, and (4) evidence that Defendant failed to pay over her taxes and filed her tax returns after the due dates.  This evidence would be offered to show motive, intent, knowledge, absence of mistake, or lack of accident.

1

## I.  Relevant Background

### A.  Factual Overview

On January 7, 2022, a grand jury charged Defendant with four counts of making and subscribing false tax returns in violation of 26 U.S.C. § 7206(1).  Indictment, D.E. 1.  On May 12, 2022, in a superseding indictment, a grand jury charged Defendant with the same offenses.  Superseding Indictment, D.E. 27.  As alleged in the Superseding Indictment, from 2013 to at least 2016, while earning wage income as a judge with the Second City Court in the Parish of New Orleans, Defendant received gross receipts from officiating marriage ceremonies.[1]  She generally charged $80 to $100 in officiant fees, and she charged more under certain circumstances, namely for marriages she officiated on Valentine's Day, outside of the courthouse where the Defendant worked, or outside of the Defendant's normal business hours.  *Id.* ¶¶ 2–3.

Defendant then underreported the gross receipts she received from officiating these weddings on her 2013 through 2016 individual income tax returns.  *Id.* ¶¶ 6–13.  Defendant reported that she received gross receipts of $16,000 for officiating weddings on her 2013, 2014, and 2015 tax returns and that she received gross receipts of $15,000 in 2016.  In preparing her returns, Defendant provided her tax preparer with the gross receipts figure and did not request her tax preparer to independently compute the gross receipts that Defendant earned from officiating weddings.

Defendant also received income from legal fees from 2013 to 2015.  She did not report that income on her 2013 and 2014 individual income tax returns and underreported that income on her

---

[1] Defendant filed the false tax returns at issue out of order.  Proceeding chronologically, she filed her 2014 tax return on or about July 2, 2015; she filed her 2015 tax return on or about October 17, 2016; she filed her 2013 tax return on or about March 20, 2017; and she filed her 2016 tax return on or about November 18, 2017.  *Id.* ¶¶ 6–13.

2015 individual income tax return.  *Id.* ¶¶ 4, 6–11.  Defendant did not inform her tax preparer of those legal fees.

### B.  2012 Tax Return

On or about March 20, 2017, the same date she filed her 2013 tax return, Defendant delinquently filed her 2012 tax return.  On her 2012 return, Defendant reported income from Trahan and Davis LLC, the law partnership she operated prior to becoming a judge.  However, Defendant failed to report income from Trahan and Davis LLC and other legal fees on her 2013 tax return and on her 2014 tax return and underreported her legal fees on her 2015 tax return.

### C.  Inquiry by the Judiciary Commission of Louisiana and 2017 Tax Return

On or about May 23, 2018, the Judiciary Commission of Louisiana ("Judiciary Commission") opened a file to determine whether Defendant committed judicial misconduct.  The Judiciary Commission, among other things, invited Defendant to comment on whether she accurately reported her income to the Louisiana Supreme Court, the IRS, and the Louisiana Department of Revenue.[2]   In response to the inquiry, Defendant had her employees collect all the marriage certificates kept at her office and organize those certificates.  Based on the number of marriages performed by Defendant, Defendant, in turn, had her tax preparer prepare amended tax returns reporting substantially higher gross income from weddings than reported on her original returns.

---

[2] The investigation was initiated due to a news report that discussed the amount of money various judges, including Defendant, charged to perform weddings.  The Judiciary Commission initially investigated allegations that the Defendant committed judicial misconduct by charging fees to conduct marriages in excess of $5 in violation of La. R.S. §§ 13:2162 and 13:2152.2.  The United States does not intend to introduce evidence regarding this aspect of the inquiry by the Judicial Commission or the news report.  The United States does intend to introduce evidence regarding the fees Defendant charged but does not intend to introduce evidence or law to the jury that the amount of the fees was improper.

In an October 18, 2018, letter to the Judiciary Commission, Defendant's attorney stated that Defendant had filed amended 2015 and 2016 tax returns and attached the amended returns. Defendant did file amended 2015 and 2016 tax returns with the IRS.   In a September 10, 2019, letter to the Judiciary Commission, Defendant's attorney stated that Defendant performed 282 weddings in 2013 and 372 weddings in 2014.   Defendant's attorney proceeded to state that Defendant intended to file amended tax returns for 2013 and 2014 "in the near future."  Defendant had her tax preparer prepare amended tax returns for 2013 and 2014 but did not file them with the IRS.  After the Judiciary Commission inquiry, the Defendant filed a 2017 federal tax return that correctly listed the gross receipts earned from officiating weddings.

### D.  Personal Financial Disclosure Statements

While serving as a judge, Defendant filed Personal Financial Disclosure Statements reporting each May the income she had received in the previous calendar year.  On her 2013 through 2016 disclosures, she reported receiving between $5,000 to $24,999 of income from officiating weddings.  Additionally, on her 2013 and 2014 disclosures, she reported receiving between $25,000 to $100,000 and between $5,000 to $24,999, respectively, from settlements from work performed prior to becoming a judge.  After the inquiry by the Judicial Commission, Defendant subsequently amended her 2014, 2015 and 2016 disclosures to report receiving between $25,000 and $100,000 from officiating weddings.

### E.  Failure to Pay Taxes and Late Filing of her Tax Returns

Defendant has engaged in a consistent pattern of failing to pay over the taxes that she owed in excess of what was withheld from Forms W-2 wages.  She also filed her tax returns after the due date.  On her 2012 tax return, after taking into account withholdings from Forms W-2, Defendant reported owing $2,606 in taxes.  She has not made any payments towards this tax debt.

4

On her 2013 tax return, after taking into account withholdings from Forms W-2, Defendant reported owing $12,491 in taxes on her 2013 individual income tax return.  She has not made any payments towards this tax debt.[3]  Both the 2012 and 2013 tax returns were filed in March 2017, which was after their respective due dates.

On her 2015 tax return, after taking into account withholdings from Forms W-2, Defendant reported owing $2,464 in taxes and subsequently made some payments towards that debt, but she stopped in November of 2018.  On or about July 29, 2019, Defendant filed an amended 2015 individual income tax return, acknowledging a tax owing of $5,617.  Defendant has not paid this tax debt.

On her 2016 tax return, after taking into account withholdings from Forms W-2, Defendant reported owing $4,873 in taxes on her 2016 individual income tax return.  She has not made any payments towards this tax debt.  On or about December 29, 2018, Defendant filed an amended 2016 individual income tax return, acknowledging a tax due and owing of $11,696.  She has not made any payments towards this tax debt.  On or about October 15, 2018, Defendant filed her 2017 individual income tax return.  After taking into account withholdings from Forms W-2, she reported taxes due of $20,392.  She has not made any payments towards this tax debt.

## II.  Law

### A.  Federal Rule of Evidence 404(b)

#### 1.  Intrinsic Acts Evidence

Federal Rule of Evidence 404(b) governs the admission of evidence of *other* bad acts, and it accordingly does not apply to evidence of acts intrinsic to the charged offenses.  *United States*

---

[3] Defendant reported owing $4,768 in taxes on her 2014 individual income tax return.  Pursuant to an installment agreement plan, Defendant ultimately paid off that tax debt in October 2018. She has not filed an amended 2014 individual income tax return to report the additional income.

*v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007); *United States v. Torres*, 685 F.2d 921, 923 (5th Cir. 1982).  "Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged."  *Sumlin*, 489 F.3d at 689.  Intrinsic act evidence "is admissible to complete the story of the crime by proving the immediate context of events in time and place."  *United Steates v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996); *see also United States v. Towne*, 870 F2d 880, 886 (2d Cir. 1989) ("[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'") (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)).

## 2. Extrinsic Acts Evidence

Federal Rule of Evidence 404(b) permits the government to introduce "[e]vidence of a crime, wrong, or other act" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Such evidence is admissible if "(1) it is relevant to an issue other than the defendant's character, and (2) its probative value is not substantially outweighed by its undue prejudice."  *United States v. Leahy*, 82 F.3d 624, 629 (5th Cir. 1996) (citing Fed. R. Evid. 403 & 404(b)); *see also United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) (identifying the same two-step test).  "While some danger of prejudice is always present, exclusion of extrinsic evidence based on its prejudicial effect 'should occur only sparingly.'"  *Leahy*, 82 F.3d at 637 (quoting *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993)).  "The application of Rule 403 [the second part of the test] must be cautious and sparing.  Its major function is limited to excluding matter of scant or cumulative probative force, dragged

in by the heels for the sake of its prejudicial effect." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

### B.  Making and Subscribing False Tax Returns

"Proving a § 7206(1) violation requires the government to prove that the defendant: (1) made and signed a materially false federal income tax return; (2) submitted a written declaration stating under penalties of perjury that the return was true and correct; (3) did not believe that the return was true and correct when he signed it; and (4) signed it willfully and with the specific intent to violate the law." *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014). To prove willfulness in criminal tax cases, the government must prove that: (1) the law imposed a duty on the defendant; (2) the defendant knew of that duty; and (3) the defendant voluntarily and intentionally violated that duty. *Cheek v. United States*, 498 U.S. 192, 201 (1991). The prosecution may prove willfulness through inference from the defendant's conduct, particularly from conduct likely to mislead or conceal. *United States v. Bishop*, 264 F.3d 535, 550–52 (5th Cir. 2001).

### III.  Analysis

As set forth above, the United States seeks to introduce (1) evidence showing Defendant properly reporting her legal and wedding income in other tax years, (2) evidence that Defendant amended her tax returns after being questioned by the Judiciary Commission of Louisiana, (3) evidence regarding statements made by Defendant in financial disclosures and amendments to those financial disclosures, and (4) evidence that Defendant failed to pay over her taxes and filed

her tax returns after the due dates. This evidence would be offered to show motive, intent, knowledge, absence of mistake, or lack of accident as it pertains to the filing of false tax returns by Defendant

### A. Defendant's 2012 Tax Return

The United States intends to introduce Defendant's 2012 federal tax return in which she reported income earned from her law firm, Trahan and Davis. The timing of the 2012 return is particularly relevant in that she filed the 2012 return the same day she filed her 2013 tax return. On her 2013 tax return, Defendant failed to report over $50,000 in income that she earned from her law firm and other legal services. Likewise, Defendant failed to report her legal fees on her 2014 return. This 2012 tax return is relevant to prove the Defendant knew that she was required to report her legal fees and that her failure to report her legal fees on her 2013 and 2014 returns was not due to a mistake or accident. This evidence shows Defendant knew she earned legal fees and intentionally failed to inform her accountant of the legal fees and report the legal fees in subsequent years. *Boyd*, 773 F.3d at 643 (stating that "[e]vidence of willfulness includes a defendant's history of previously filing accurate tax returns and his receipt of warning notices from the IRS" and affirming the district court's decision to admit twenty years' worth of tax records). Nor is this unduly prejudicial, as the Government's proof would be brief and focused on Defendant properly reporting her legal income in 2012.

### B. Defendant's Amended Returns

The United States intends to offer into evidence the circumstances around the preparation and filing of Defendant's amended tax returns and the amended tax returns themselves. The United States anticipates that the main question in this case will be whether Defendant willfully filed false tax returns or made a mistake with respect to reporting the gross receipts to her tax preparer. The

circumstances leading up to the amended returns and the amended returns themselves show that Defendant had the means to accurately compute the gross receipts and that to do so was relatively easy.  This evidence is being offered to prove Defendant's intent, knowledge, absence of mistake, or lack of accident in failing to report all of her wedding income.

In May 2018, the Judiciary Commission invited Defendant to comment on whether she accurately reported her income to the Louisiana Supreme Court, the IRS, and the Louisiana Department of Revenue.  In response to the inquiry, Defendant had her employees collect all the marriage certificates kept at her office and organize those certificates.[4]  Defendant and others counted the number of marriages performed by Defendant.  Defendant and her tax preparer then multiplied the number of weddings by either $80 or $100 to compute the gross receipts for each year.  Defendant's tax preparer then prepared amended tax returns for the 2013, 2014, 2015, and 2016 tax years reporting additional wedding income.  Defendant's attorney provided the amended numbers to the Judiciary Commission.

This evidence shows that Defendant had the means and knowledge to accurately compute the gross receipts she earned from officiating weddings.  Even with this information readily available, Defendant intentionally chose to provide her preparer with false gross receipts.  This was not a mistake or accident as Defendant will likely claim, but rather was intentional and knowing.  At a minimum, it shows that Defendant acted with deliberate ignorance in providing false information to her tax preparer when she deliberately closed her eyes to finding to what was obviously available to her.

---

[4] During her time as a judge, Defendant had her staff keep a copy of the marriage licenses issued and then stored them at her office.  The marriage licenses identified who officiated the marriage ceremony, such as Defendant.

Moreover, the probative value of this evidence is not substantially outweighed by its undue prejudice.   The evidence will be focused and generally introduced through the testimony of witnesses who will already testify.[5]

C.   *Failure to Pay Taxes and Late Filing*

The United States intends to offer evidence that Defendant failed to pay all of her taxes between 2012 through 2017, except that she paid late in 2014.   In addition, the United States intends to offer evidence that Defendant filed her tax returns after the due dates—particularly filing the 2012 and 2013 years after their due dates.   With respect to the 2013, 2015 and 2016 tax years, the United States argues that the evidence is intrinsic since it arises from the same transactions that form the charges.   The evidence of the failure to pay or late payment will be found in the same evidence (tax returns and account transcripts) that shows the false returns.   The failure to pay and late payment is necessary to complete the story of Defendant's filing of false tax returns and provides the appropriate context for the jury to consider Defendant's actions of filing false returns and her motive for filing false returns—*i.e.,* to reduce her tax liabilities.   *See Coleman*, 78 F.3d at 156 ("[Intrinsic] evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place."); *United States v. Clements*, 73 F.3d 1330, 1337 (5th Cir. 1996) ("Direct evidence that Clements was aware of his tax liability, even though prior to the time period of the indictment, was 'inextricably intertwined' with the crime charged.").

In the alternative, the failure to pay the tax debt and late filings are admissible under Rule 404(b) because they are offered to prove an issue other than Defendant's character—specifically her motive, intent, knowledge, and absence of mistake in filing the false tax returns at issue.   The

---

[5] The United States, alternatively, will move in the amended tax returns as party admissions as to the proper amount of gross receipts.

failure to pay these taxes shows a general motive of Defendant to avoid taxes which makes it more likely she was willful in underreporting her gross receipts. *See United States v. McDonough*, 603 F.2d 19, 23 (7th Cir. 1976) ("Both the failure to file a return and the failure to pay taxes show a general motive to avoid taxes which makes it more likely that the defendant willfully filed fraudulent withholding exemption claims."). Defendant knew she had a tax liability that was growing each year and intentionally lied on her returns in order to deflate her tax liability. Accordingly, this evidence helps to show motive on her part as to why she was underreporting her income. Finally, failing to pay the tax when filing the original returns and even after filing the amended returns demonstrates that Defendant did not merely make a mathematical error, but rather simply did not want to pay her taxes in full. Short of a confession from a defendant, there is no better proof that a defendant intended to evade her tax liability than the evidence at issue here—the refusal to pay even the tax liability she admitted. *See United States v. Bok*, 156 F.3d 157, 165 (2d Cir. 1998) ("a defendant's past taxpaying record is admissible to prove willfulness circumstantially"); *United States v. Jerkins*, 871 F.2d 598, 603–04 (6th Cir. 1989) (upholding admission of defendant's history of filing delinquent tax returns under Rule 404(b) in prosecution for tax fraud conspiracy, tax evasion, and filing false tax returns); *United States v. Farris*, 517 F.2d 226, 229 (7th Cir. 1975) ("Consequently, no error was committed in admitting the evidence regarding the years immediately prior to and subsequent to the years at issue."); *United States v. Upton*, 799 F.2d 432, 433 (8th Cir. 1986) ("Evidence of Upton's questionable compliance with tax laws, both in the years prior to and subsequent to 1980-81, is probative of willfulness in the present context."); *United States v. Snow*, 529 F.2d 224, 226 (9th Cir. 1976) (holding that prior failures to file returns was admissible to show willfulness in tax fraud case); *United States v. Scott*, 37 F.3d 1564, 1582 (10th Cir. 1994) ("We agree with the court that the evidence [of a prior failure to file

a tax return] is relevant to [defendant's] participation in the conspiracy by showing tax motive, a negative attitude toward payment of taxes, and an intent to violate his duty to pay income taxes.").

In tax cases in which the prosecution must prove the defendant's willful violation of the tax laws, evidence that the defendant "committed similar offenses and had a history of non-compliance with the IRS is admissible and relevant to prove willfulness." *United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006); *see also United States v. Van Metre*, 150 F.3d 339, 350 (4th Cir. 1998) (putting "one's intent at issue . . . makes relevant evidence of similar crimes when that evidence proves criminal intent."). Recently, in *United States v. Williams*, 30 F.4th 263 (5th Cir. 2022), the Fifth Circuit acknowledged that the defendant's "tax history may well have permissible uses under Rule 404(b)," but ultimately held that the district court did not clearly abuse its discretion in excluding the prior conduct. The district court excluded evidence related to the defendant's past history of late filing and late tax payments under Rules 404(b) and 403. *Id.* at 265. The Fifth Circuit declined to overturn the district court's ruling, holding that the district court did not clearly abuse its discretion finding, among other things, that "[p]aying taxes late is not the same as lying on tax returns" and the government sought to introduce close to a decade of late filings and payments. *Id.* at *268.

Here, the Government does not seek to admit evidence of ten years of late filings and payments for conduct that occurred prior to the charged counts. Rather, the Government seeks to admit only evidence of Defendant's tax conduct immediately preceding and continuing through the charged offenses. That outstanding tax obligation *when Defendant committed the charged conduct* is probative of not only Defendant's willfulness, but, as noted above, her motive, knowledge, and absence of mistake. By failing to report all of her income, Defendant knew it

would keep her outstanding tax balances lower.  The danger of distraction or minitrials by going back only one year is significantly less than the danger in going back over a decade.

The jury is unlikely to be unduly prejudiced—in a prosecution of four false tax returns— by evidence indicating that Defendant also was delinquent in paying her self-reported tax debt. The failure to pay lacks the deceitful nature of making and subscribing to false tax returns, so a jury likely would not be unduly sensationalized upon learning the relatively mundane evidence regarding Defendant's delinquent tax payments.  *See United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995) ("In this case, the balancing test undeniably weighs in favor of admitting the evidence, because the evidence of Boyd's personal use of marijuana and cocaine did not involve conduct any more sensational or disturbing than the crimes with which he was charged.").  If necessary, the Court may give a jury instruction to further minimize the potential for unfair prejudice.  *See Williams*, 900 F.2d 823, 827 (5th Cir. 1990) ("In order to ensure that the jury understands the purpose for which the evidence is introduced, the trial court will clearly instruct the jury that the evidence is presented to show a pattern of operation that would suggest knowledge and intent, not to show in any way that there were twenty mailings of cocaine.").

### D.  *Defendant's False Statements to the Supreme Court of Louisiana.*

Finally, Defendant lied to the Supreme Court of Louisiana, falsely reporting that she earned less than $25,000 from officiating weddings in 2014, 2015, and 2016 when she had in fact earned greater income in those years—as she later acknowledged in amended financial disclosures.  This is effectively the same false statement that she made to the IRS on her tax returns: that she had gross receipts of only $16,000 (or $15,200 in 2016), when in fact her gross receipts were greater than what she reported.  The false reports are therefore intrinsic to the charged offenses.

Alternatively, the false statements are admissible to prove an issue other than the Defendant's character, specifically her intent and absence of mistake in filing the false tax returns at issue. The fact that she reported the same false income to two separate bodies particularly demonstrates that Defendant acted deliberately, rather than making an innocent one-time mistake (intent). Additionally, Defendant *did* report income from legal fees on her 2013 and 2014 disclosures—income she omitted on her 2013 and 2014 individual income tax returns. Therefore, those financial disclosures are relevant to prove Defendant's knowledge of her receipt of legal fee income.

Again, the danger for undue prejudice is small here where the false statements are no more inflammatory than the charged conduct—they are in fact virtually the same false statements.

### IV.  Conclusion

The proffered evidence is direct evidence of the crimes charged, and, alternatively, admissible under Rule 404(b). The evidence is directly relevant to issues other than character. The probative value of this evidence is extremely high, and there is little, if any, risk of undue prejudice—especially with careful limiting instructions from the Court. Accordingly, the Government respectfully requests that the Court permit the use of the proffered evidence.

Respectfully submitted,

DUANE A. EVANS
United States Attorney


*/s/ Brian Flanagan*
BRIAN E. FLANAGAN
Trial Attorney, Tax Division
150 M. Street NE, Suite 1405
Washington, D.C., 20002
Telephone: 202-616-3362
Email: brian.e.flanagan@usdoj.gov

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brian Flanagan
BRIAN E. FLANAGAN
Trial Attorney, Tax Division