```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

   ***************************************************************

   UNITED STATES OF AMERICA

                              Criminal Action No. 22-2
   VS.                        Section "G"
                              New Orleans, Louisiana
                              November 18, 2022

   ERNESTINE ANDERSON-TRAHAN
   ***************************************************************
```

                    TRANSCRIPT OF JURY TRIAL
        HEARD BEFORE THE HONORABLE NANNETTE JOLIVETTE BROWN
              UNITED STATES CHIEF DISTRICT JUDGE
                         VOLUME V


<u>APPEARANCES:</u>

```
FOR THE GOVERNMENT:         Brian Eugene Flanagan
                            DOJ-Tax
                            150 M Street NE
                            Suite 1.405
                            Washington, DC 20004

                            Marissa R. Brodney
                            Michael C. Boteler
                            DOJ-Tax
                            Tax Division, SCES
                            150 M Street NE
                            Washington, DC 20002



FOR THE DEFENDANT:          Michael William Magner
                            Thomas C. Wicker, IV
                            Jones Walker
                            Place St. Charles
                            201 St. Charles Ave.
                            Suite 5100
                            New Orleans, LA 70170
```

**OFFICIAL TRANSCRIPT**

ALSO PRESENT:                    Judge Ernestine Anderson-Trahan
                                 Kim Better
                                 Aaron Washington
                                 Timothy Moore
                                 Dewaiyne Horner

Official Court Reporter:         Nichelle N. Wheeler, RMR, CRR
                                 500 Poydras Street, B-275
                                 New Orleans, Louisiana 70130
                                 (504) 589-7775

    Proceedings recorded by mechanical stenography,
transcript produced via computer.

**OFFICIAL TRANSCRIPT**

I N D E X

| | **Page** |
|---|---|
| JURY QUESTION NO. 4 | 806 |
| JURY QUESTION NO. 5 | 810 |
| JURY QUESTION NO. 6 | 820 |
| RULE 29 MOTION TO DISMISS | 824 |

1      <u>**P R O C E E D I N G S**</u>

2                (Call to order of the court.)

3                <u>JURY QUESTION NO. 4</u>

4                     (In open court.)

5      THE COURT:  We have another note from the jury.

6           It says we still can't come to a single conclusion

7      and are pushing for deadlock.

8           THE DEFENDANT:  What's the last thing she said?

9           THE COURT:  I said the question is, we still can't

10     come to a single conclusion and are pushing for a deadlock.

11          MR. BOTELER:  Your Honor, the government at this

12     point would request that -- I think it seems to be that they

13     are deadlocked and we ask that -- it's been hung at this

14     stage --

15          THE COURT:  A mistrial?

16          MR. BOTELER:  A mistrial, yes, Your Honor.  We've

17     seen this constant note.  My hope was that if they had an

18     evening to sleep on it and reflect and come back this morning

19     that they might be able to have a refreshed mind, but at this

20     stage, I think, Your Honor, it is deadlocked and we move for

21     a mistrial at this point.

22          MR. MAGNER:  We think there are things that can be

23     done short of that, including the Allen charge, which we

24     would ask for at this time.

25          THE COURT:  All right.  And I read it to you

**OFFICIAL TRANSCRIPT**

1    yesterday.  I'm sorry.  I'm going to have to get it again.

2    Oh, here I have it.

3         Because it wasn't quite an Allen charge yesterday.

4         MR. MAGNER:  Yes.

5         THE COURT:  And the thing is, this is the first time

6    they haven't asked like, okay, what is our -- like, what is

7    the process?  What is the option?  And, you know, the Allen

8    charge will explain that.  It's the same thing that goes to

9    another jury and they're not any more likely to find anything

10   differently because I fell short of that.  I think they spent

11   enough time to -- let me just go ahead and give them the

12   Allen charge and the defense on the record.

13        MR. MAGNER:  The defense would request to modify

14   Allen charge from the Fifth Circuit pattern jury

15   instructions.

16        THE COURT:  All right.  Let me just read over this

17   before we bring them in.

18        Okay.  I just wanted to make sure I had it.

19        THE CASE MANAGER:  Bring them in?

20        THE COURT:  Uh-huh.

21         (Whereupon, the jury enters the courtroom.)

22        THE COURT:  You can have a seat.  Good morning and

23   thank you for all returning.  I'm in receipt of your note and

24   I shared it with the lawyers.

25        I'm going to ask that you continue your deliberations

1 in an effort to agree upon a verdict and dispose of this

2 case, and I have a few additional comments I'd like for you

3 to consider as you do so.

4   This is an important case.  If you should fail to

5 agree on a verdict, the case is left open and may be tried

6 again.  Any future jury must be selected in the same manner

7 and from the same source as you were chosen, and there is no

8 reason to believe that the case could ever be submitted to 12

9 men or women more conscientious, more impartial, or more

10 competent to decide it or that more clearer evidence would

11 ever be produced.  This is it.

12   Those of you who will believe that the government has

13 proved the defendant guilty beyond a reasonable doubt should

14 stop and ask yourselves if the evidence is really convincing

15 enough given that other members of the jury are not

16 convinced, and those of you who believe that the government

17 has not proved the defendant guilty beyond a reasonable doubt

18 should stop and ask yourselves if the doubt you have is a

19 reasonable one, given that other members of the jury do not

20 share your doubt.  Remember at all times that no juror is

21 expected to yield a conscientious opinion he or she may have

22 as to the weight or effect of the evidence, but remember also

23 that after full deliberation and consideration of the

24 evidence in this case, it is your duty to agree upon the

25 verdict if you can do so without surrendering your

1    conscientious opinion.  You must also remember that if the

2    evidence in this case fails to establish guilt beyond a

3    reasonable doubt, the accused should have your unanimous

4    verdict of not guilty.

5          Now, you may be as leisurely in your deliberations as

6    the occasion may require and you can take all the time which

7    you may feel is necessary.  In fact, we'll order you lunch at

8    about 11:30.

9          I will ask that you retire once again and continue

10   your deliberations with these additional comments in mind to

11   be applied.  Of course, in conjunction with all the

12   instructions that I have previously given to you.

13         JUROR:  May we receive a copy of those instructions?

14         THE COURT:  Anyone have an objection?

15         MR. MAGNER:  No objection.

16         MR. FLANAGAN:  No objection.

17         Juror at top first on the right said that.

18         THE COURT:  I ask that you retire and continue to

19   deliberate.

20         THE CASE MANAGER:  All rise.

21            (Whereupon, the jury exits the courtroom.)

22         THE COURT:  I have sat here from last night and

23   scratched over it and wrote things like what I wanted for

24   dinner, so we'll get a clean copy to them.

25         Thank you for your patience.

**OFFICIAL TRANSCRIPT**

1      MR. BOTELER:  Thank you, Your Honor.

2                   (In open court.)

3                   <u>JURY QUESTION NO. 5</u>

4      THE COURT:  Another question from the jury.  You can

5  have a seat.

6      The question is, can we have the IRS tax rights that

7  were given in closing argument?

8      So that was a demonstrative.  It wasn't offered into

9  evidence, was it?  You did cross-examine some witnesses on

10 it.

11     MR. MAGNER:  I think I cross-examined Mr. Carrone and

12 said, you know, if this was the income --

13     THE COURT:  The Taxpayer Bill of Rights.

14     MR. WICKER:  Talking about Form-1, right?

15     THE COURT:  The Taxpayer Bill of Rights.

16     MR. MAGNER:  I don't think it was introduced into

17 evidence.

18     MR. BOTELER:  Your Honor, it wasn't introduced into

19 evidence.  I think it was shown as a demonstrative on his

20 closing.

21     THE COURT:  So if you agree, I can show -- the

22 witness -- I'm sorry, the jury can -- I mean, demonstratives

23 are not evidence and they're instructed that they're not

24 evidence, but, I mean, sometimes if they're charts and stuff

25 and if they want them, the parties agree and if you have a

**OFFICIAL TRANSCRIPT**

1    copy, they can see it.  What do you --

2         MR. BOTELER:  Your Honor, I would object to that

3    because it wasn't introduced into evidence.  It was just a

4    demonstrative and it was mostly connected to some

5    cross-examination, and I do not remember the exact portions

6    which were shown on the PowerPoint slide.

7         THE COURT:  Do you remember?  Do you have it?  Do you

8    remember?  Can you show it to me?

9         MR. MAGNER:  I think Mr. Wicker may be able to pull

10   it up.  I'll check myself here.  Just one moment.

11        THE CASE MANAGER:  Would you like it on your screen

12   or want me to print it out for you.

13        THE COURT:  If I look at it -- do you have to print

14   it somewhere else or can you print it in here?

15        THE CASE MANAGER:  I can print it right here.

16        MR. WICKER:  Judge, we were talking yesterday about

17   we have a new system and it's making everything run very

18   slowly.

19        MR. MAGNER:  I'm disappointed they didn't ask for the

20   dog.

21                       (Laughter)

22        THE COURT:  I thought that's what it would be

23   actually at some point.  I was going to order you to find

24   that dog and bring it into court.  The best evidence of the

25   dog is the dog itself.

**OFFICIAL TRANSCRIPT**

1          THE DEFENDANT:  Can I just bring my dog instead?

2          THE COURT:  But the thing is, where they said, we

3    would have to kick the dog and trip over the dog to see --

4          THE DEFENDANT:  No, no, no, not my little sweetie.

5          THE COURT:  We won't kick the dog.

6          MR. MAGNER:  I just pulled it up and I will share it.

7          MR. WICKER:  I just sent it to Dena.

8          MR. MAGNER:  I'll send it to the government too.

9          Oh, yeah.  It's Slide No. 2 in the PowerPoint.

10          You sent her the whole thing?

11          MR. WICKER:  Yes.

12          Brian, you should get it when Dena gets it.

13          Did you get it yet, Dena?

14          THE CASE MANAGER:  No, not yet.

15          MR. MAGNER:  The two provisions, Judge.

16          THE COURT:  I want to see what was put -- I thought I

17    saw more of a document.

18          MR. MAGNER:  Is it okay if I --

19          MR. BOTELER:  Yeah, you can -- do you mind if I come

20    up to see too?

21          MR. MAGNER:  I sent it to you.

22          MR. BOTELER:  Do you mind if I just look at it --

23          MR. MAGNER:  Sure.

24          THE COURT:  Dena, do you have anything?

25          THE CASE MANAGER:  No, it hasn't come through.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  What does it look like, Mr. Magner?

2          MR. MAGNER:  Yeah, these are the two provisions I

3     believe.

4          THE CASE MANAGER:  Got it.

5          MR. MAGNER:  I believe I cross-examined Mr. Carrone

6     and it was in my PowerPoint, the right to challenge the IRS's

7     position and be heard and the right to a fair and just tax

8     system.

9          THE CASE MANAGER:  I just got it, Judge.

10         THE COURT:  I thought they actually saw the document.

11         MR. WICKER:  For Mr. Carrone, I think he pulled it up

12    but I don't think was shown.

13         THE COURT:  But not the closing?

14         MR. MAGNER:  I did in the closing for sure.  I think

15    I just asked him about it in cross-examination.

16         THE COURT:  But they're saying in the closing

17    argument.  It was a demonstrative I thought, but I thought I

18    saw the document.

19         MR. BOTELER:  Your Honor, my recollection, the

20    document was not introduced into trial.

21         THE COURT:  No, I don't think it was -- but it was a

22    slide.

23         MR. BOTELER:  Yeah, there was -- if my recollection,

24    there was a slide on Mr. Magner's PowerPoint.  There were

25    questions that were asked.

1      THE COURT:  Yes, but they're asking for the slide

2  from closing.  Not that.  Did you take a look at it and see

3  what -- if there's a problem with --

4      MR. BOTELER:  Yes, Your Honor.  The United States

5  would object to it.

6      THE COURT:  Why?

7      MR. BOTELER:  Because it's only selected portions and

8  I sort of like as with respect to Jury Question No. 1, when

9  they asked about different questions about criminal

10  liability, they heard testimony on cross-examination about

11  the --

12      THE COURT:  But I can't tell them that I can't

13  comment on the evidence because this isn't evidence.  This is

14  a demonstrative.

15      MR. BOTELER:  Your Honor, I would object to

16  demonstratives going back because the document wasn't

17  actually introduced even though Mr. Magner questioned someone

18  on the particular bills.  Those particular provisions were

19  not shown to the witness.  There hasn't been any actual

20  demonstration of it other than in his demonstrative in his

21  closing.

22      MR. MAGNER:  If part of the government's objection, I

23  understand, it's not the entire objection, is that it's not

24  the entire Taxpayer Bill of Rights, we would suggest the

25  entire one could certainly go back.  I did cross-examine not

**OFFICIAL TRANSCRIPT**

1    only Mr. Carrone, but Ms. Kotsay concerning the bill of

2    rights, and she admitted after a fashion that she was

3    familiar with that as the IRS Form No. 1.

4        THE COURT:  Well, what they're asking for is a

5    demonstrative and I've already instructed them that that's

6    not evidence.  A demonstrative is not evidence.  And even --

7    so they specifically refer to closing arguments.  Closing

8    arguments aren't evidence.  So --

9        MR. MAGNER:  I think as long as they have that

10   guidance that it's not evidence, that it's just part of my

11   argument.

12       THE COURT:  But then why would I allow them to

13   consider it and send it back?  Because I tell them they're

14   not to consider anything that's not in evidence and they

15   shouldn't consider your -- I mean, your statements are just

16   to guide them but --

17       MR. WICKER:  Your Honor, I think --

18       THE COURT:  And it is -- did they know you were going

19   to show that -- did the government know that was going to be

20   a slide?

21       MR. BOTELER:  No, Your Honor.

22       MR. MAGNER:  I did not give them advance notice.

23       THE COURT:  Because if they had known, then they

24   could have -- could have had an opportunity to have maybe a

25   counter slide.  You know, there wasn't a whole lot.

1          MR. MAGNER:  If there's a counter slide that says the

2     IRS can be unjust and unfair --

3          THE COURT:  Well, there might be a slide that says, I

4     don't know, you're not entitled to an audit.  It could be

5     something like that.

6          MR. MAGNER:  I understand.

7          THE COURT:  So I guess I would tell them in a kind of

8     nice way is unfortunately as you were -- unfortunately -- or

9     just -- (reading.)

10          MR. MAGNER:  I don't want to interrupt the court.

11          THE COURT:  I'm trying to come up with a --

12     (reading.)

13          The Taxpayer Bill of Rights was noted on a PowerPoint

14     slide by the defense in its closing argument.  The IRS

15     Taxpayer Bill of Rights was not entered into evidence at

16     trial.  Accordingly, the court cannot provide a copy of it.

17          MR. MAGNER:  We would ask for an additional sentence

18     to the effect of the jury may consider the testimony of the

19     witnesses regarding the IRS bill of rights as evidence.

20     That's a fair compromise.

21          THE COURT:  I don't know if I'll -- I mean --

22          MR. MAGNER:  They both testified about it.

23          THE COURT:  I know, but I can't direct them.  They

24     just -- it's beyond their question.  Can we have the IRS tax

25     rights that were given in closing arguments?  The answer

1    simply is no.  I mean, so, you know, I can't remind them that

2    some -- I understand what you're trying to do, but I can't

3    remind them that a witness said so.  The best I can do is --

4    the answer is no, right?  The IRS Taxpayer Bill of Rights was

5    noted on a PowerPoint slide in the defense -- by the defense

6    in its closing argument.  The IRS Taxpayer Bill of Rights was

7    not entered into evidence at trial.  Accordingly, the court

8    cannot provide a copy.  I said, here, as it was not entered

9    into evidence.

10            What do you think?

11            MR. BOTELER:  Your Honor, United States is fine with

12   that, but I would also just see there could be a reference to

13   Jury Charge No. 4, because in that, you also mentioned what

14   lawyers say is not binding upon you and the function of the

15   lawyers is to point out things that are most --

16            MS. BRODNEY:  I was going to say the first two

17   paragraphs of Jury Charge No. 4 you essentially address the

18   issue of what is evidence; evidence is the sworn testimony of

19   witnesses including stipulations and the exhibits, clarify as

20   to questions, statements, objections arguments made are

21   not evidence.  To the extent you feel like maybe more

22   explanation may be --

23            THE COURT:  Wait.  You're saying Jury Charge No. 4?

24            MS. BRODNEY:  Yes, Your Honor.

25            THE COURT:  Which says -- as you told -- the entire

1    thing.

2           MS. BRODNEY:  The first two paragraphs seem to

3    address --

4           THE COURT:  I will give them the whole thing.  I'm

5    not going to direct them to anything, but the whole charge

6    says, Jury Charge No. 4, says as I told you earlier, it is

7    your duty to determine the facts.  To do so, you must

8    consider only the evidence presented during the trial.

9    Evidence is the sworn testimony of the witnesses including

10   stipulations and the exhibits.  The questions, statements,

11   objections, and arguments made by lawyers are not evidence.

12   The function of the lawyers is to point out those things that

13   are most significant or most helpful to their side of the

14   case and in doing so to call their attention to certain facts

15   or inferences that might otherwise escape your notice.  In

16   the final analysis, however, it is your own recollection and

17   interpretation of the evidence that controls in the case.

18   What the lawyer say is not binding upon you.  During the

19   trial, I have sustained objections.  It goes into do not

20   speculate, also do not assume from anything that I say, I

21   would just give them the whole jury -- please see Jury Charge

22   No. 4.

23          MR. BOTELER:  Yes, Your Honor.

24          MR. MAGNER:  That's fine, Judge.  Thank you.

25          THE COURT:  I want to make sure I have the right one.

1   For the record, the question is, can we have the IRS tax

2   rights that were given in closing argument?

3        The answer:  No, the IRS Taxpayer Bill of Rights was

4   noted on a PowerPoint slide by the defense in its closing

5   argument.  The IRS Taxpayer Bill of Rights was not entered

6   into evidence as an exhibit.  Accordingly, the court cannot

7   provide a copy of it as it was not entered into evidence.

8   Please see Jury Instruction No. 4.

9        MR. BOTELER:  No objection, Your Honor.  That is Jury

10  No. 4.

11       MR. MAGNER:  Yes, that's acceptable, Judge.

12       THE COURT:  So what I'm -- you know, just because we

13  read this a couple times, we agree this is Jury Charge No. 4,

14  I'm going to send back Jury Charge No. 4.  I don't want it to

15  be something in there crazy like, sorry?  This says don't

16  consider or this says something else back there when they're

17  deliberating.

18       MR. WICKER:  Your Honor, can you read that one more

19  time?  I'm sorry.

20       THE COURT:  Okay.  The question is:  Can we have the

21  IRS tax rights that were given in closing argument?

22       The answer from the court is no, the IRS Taxpayer

23  Bill of Rights was noted on a PowerPoint slide by the defense

24  in its closing argument.  The IRS Taxpayer Bill of Rights was

25  not entered into evidence as an exhibit.  Accordingly, the

**OFFICIAL TRANSCRIPT**

1    court cannot provide a copy as it was not entered into

2    evidence.  Please see Jury Instruction No. 4.

3         MR. WICKER:  Thank you, Your Honor.

4         MR. MAGNER:  Thank you, Your Honor.

5         THE COURT:  Can you give them Attachment 1?

6         THE CASE MANAGER:  Yes.

7         We need to know what question that is.

8         THE CASE MANAGER:  Question 5?

9         THE COURT:  There it is.

10        All right.  Until we hear further, we're adjourned.

11        THE CASE MANAGER:  All rise.

12                   (Recess taken.)

13                   (In open court.)

14                 JURY QUESTION NO. 6

15        THE COURT:  The note from the jury is that we still

16   can't come to a mutual decision on a verdict and would like

17   to let court know we can't come to a verdict and have

18   exhausted every avenue of deliberation.

19        MR. MAGNER:  So I think we're close to the end here,

20   Judge.  The only thing I would ask, would you ask for

21   clarification as to whether that is as to all counts?  Are

22   you able to return a verdict on any count?

23        MR. BOTELER:  No objection to that clarification,

24   Your Honor.

25        MR. MAGNER:  I'm sure we'll get a prompt response.

**OFFICIAL TRANSCRIPT**

1    THE COURT:  So the response is, is this as to all

2    counts?  Are you able to reach a verdict on any counts?

3    MR. BOTELER:  That's acceptable to the United States.

4    MR. MAGNER:  That's acceptable.  Thank you, Judge.

5    THE COURT:  Okay.  We'll probably wait for this

6    response.  Just have them write it down below mine and have

7    the foreman sign it.

8                        (Recess taken.)

9                        (In open court.)

10   THE COURT:  Their response is "No, not on any

11   counts."

12   MR. MAGNER:  Okay.

13   THE COURT:  So we want to bring them back in here.

14   I'll clarify that they are deadlocked and then I am going

15   to -- can you hold on one second?  I asked a question to

16   somebody.

17   Let's just take a brief recess.  There was an issue I

18   was concerned about.

19   THE CASE MANAGER:  All rise.

20                        (Recess taken.)

21                        (In open court.)

22   THE COURT:  I was trying to find our local rule.  I'm

23   going to call the jury back, confirm that last note, that

24   they are deadlocked on every count.  But I'm going to advise

25   them of our Local Rule 23.2 and I'll read it to you.  If

**OFFICIAL TRANSCRIPT**

1    you're not familiar with it.  I know the government practices

2    outside this district.

3         It says "A juror has no obligation to speak to any

4    person about any case and may refuse all interviews or

5    requests for comments.  Attorneys and parties to an action or

6    anyone acting on their behalf are prohibited from speaking

7    with, examining, or interviewing any juror regarding the

8    proceedings except with leave of court.  If leave of court is

9    granted, it shall be conducted only as specifically directed

10   by the court.  No person may make repeated requests to

11   interview or question a juror after a juror has expressed any

12   desire not to be interviewed.  And I'm going to tell them if

13   they have any problem with anyone trying to interview them

14   they should give me a call and I'll intervene.  Okay?  Are we

15   good with that?

16        MR. BOTELER:  Thank you, Your Honor.

17        THE COURT:  All right.  Let's bring them in.

18          (Whereupon, the jury enters the courtroom.)

19        THE COURT:  You can have a seat.

20        Can the foreman please rise?

21        Am I correct, Mr. Foreman, in my understanding in

22   your note to the court that the jury is unable to reach a

23   unanimous verdict as to any count in the superseding

24   indictment?

25        JUROR NO. 1:  That is correct.

1          THE COURT:  And, accordingly, you're hopelessly

2     deadlocked?

3          JUROR NO. 1:  That is correct.

4          THE COURT:  Well, I want to thank you all for your

5     service.  I think you all have worked hard.  It's been a long

6     week and we sincerely appreciate your service.  So at this

7     time, I'm going to dismiss the jury.  Ms. White will have

8     certificates for you.  I usually hand them out.

9          MR. FLANAGAN:  Did Your Honor want to read the jury

10    the rule?

11         THE COURT:  Oh, thank you.  Thank you.

12         Let me remind you all -- not remind you all, but I'm

13    going to advise you all of our local rule we have here that

14    you are bound to abide by and it is that a jury -- a juror

15    has no obligation to speak to any person about any case and

16    may refuse all interviews or requests for comments and I

17    certainly encourage you not to talk about your deliberations.

18    But attorneys or parties to an action, these people here, or

19    anyone acting on their behalf are prohibited from speaking

20    with, examining, or interviewing any juror regarding the

21    proceedings, except with leave of court, which means they

22    have to ask me first.  If leave of court is granted, it shall

23    be conducted only as specifically directed by the court.  And

24    finally no person may make repeated requests to interview or

25    interview a juror after the juror has expressed the desire

1  not to be interviewed.  And I say that to the public.  I say

2  it to you that if anyone is bothering you, you know, about

3  trying to get some information from you, you let me know.

4  Dena will make sure that you have a way to contact the court

5  and I will intervene on your behalf.  So with that, thank

6  you.

7      I'm so sorry.

8      MR. FLANAGAN:  Thank you, Your Honor.

9      THE COURT:  I wanted to make sure I told them that.

10  You are dismissed and thank you for your service.

11      She'll give you your certificates.  I'll go in there

12  and help her hand them out.  I have some business here first.

13  Thank you.  We won't keep you long.

14          (Whereupon, the jury exits the courtroom.)

15              RULE 29 MOTION TO DISMISS

16      THE COURT:  You can have a seat, Mr. Magner.

17      MR. MAGNER:  At this time, the defense renews its

18  request for a dismissal, a judgment of acquittal, based on

19  Rule 29 due to the insufficiency of the government's

20  evidence.  We believed it then.  We believe it even more

21  strongly now.  They have simply failed to meet their burden

22  of proof that this woman acted willfully and it's time that

23  she really be allowed to get on with her life and this

24  really -- it would be unfair to subject her to this any

25  longer.

1          THE COURT:  All right.

2          MS. BRODNEY:  Yes, Your Honor.  The government would

3    note that, for example, with respect to 2016, jury heard

4    evidence that Judge Trahan knew that the number of weddings

5    increased as evidenced by her raising of her fee to account

6    for the greater of amount of work that she and her staff were

7    going to be doing.  In the raising of the fee itself, that

8    was indication that she understood the number of weddings to

9    be increasing and in the obtaining of more money for those

10   weddings, indication that the amount of money being obtained

11   was increasing and the jury saw evidence and the jury saw

12   evidence that Judge Trahan wrote a number down in her

13   handwriting for her tax preparer that reflected an amount of

14   gross receipts from weddings less than the amount from

15   previous years.

16          The jury also saw evidence of a difference in large

17   magnitude in the amount of money obtained from weddings

18   versus reported on gross receipts for tax returns across

19   multiple years, 2014, '15, and '16.  The jury is able to

20   infer willfulness from a pattern of behavior.  Moreover, the

21   jury saw evidence that Judge Trahan had outstanding tax debt

22   which would provide motive from which the jury could infer

23   willfulness from not wanting to increase that tax debt

24   especially in light of unpaid taxes.

25          For all of those reasons, the government believes the

1  jury saw sufficient evidence from which a reasonable juror

2  could infer willfulness.  Moreover, the other elements of the

3  offenses, as defense noted, that that was the element that

4  the court discussed being most at issue, but other elements

5  were also met.

6          MR. MAGNER:  Judge, just to respond briefly, I mean,

7  I think the evidence is pretty clear at this point that what

8  we're arguing about is about $5,000 in taxes.  She was never

9  given an opportunity to have an audit, to be able to sit down

10 with the IRS and discuss this matter in some sensible way.

11 And we have to have some perspective here in terms of what is

12 at issue.  And I just simply don't believe that any

13 reasonable juror could conclude under the circumstances of

14 this case that she was willful in any way.  And, you know, I

15 think we -- it sounds like we had one hardheaded juror and,

16 you know, that's our system, but it's also part of our system

17 where the court can intervene when there's such a wholesale

18 failure of proof on the part of the government.

19         THE COURT:  What I'm going to do is, you know, I want

20 to think about this and know what evidence is actually in the

21 record.  So I'm going to give the defendants -- how much time

22 do you need?  14 days?  20 days?  To give me a written brief

23 citing the evidence in the record?

24         MR. MAGNER:  Yes, Your Honor.

25         THE COURT:  And then I'll give the government 14 days

1    to respond and give you an opportunity to reply.  And I'll

2    give you a written judgment on that as soon as I can.  I'll

3    move quickly, but, you know, this is really -- this is

4    really, really -- it's a tough case.  I understand what

5    the -- I understand what the government is saying, but I also

6    have to -- you know, bring into play all the evidence that

7    was heard and I think if I see it on paper, maybe it might be

8    a little clear.  I think the government -- you haven't

9    conceded yet that their -- or have you, that the amount of

10   the tax debt, which doesn't necessarily go to -- I'm not

11   sure.  I can't say whether or not it goes -- but there are

12   also -- there's all these other factors, and when I think all

13   the instructions that the jury had, you know, at the time,

14   you know, considering a reasonable jury with these

15   instructions that you all agreed to, it does allow them to

16   take into account, let's remind the government, a number of

17   factors to decide willfulness.

18            MR. MAGNER:  And we have provided the government with

19   documentary evidence, so it's clear from the evidence that

20   Mr. Carrone determined that the tax debt was $25,000 and

21   change.  We've provided them with documentary evidence that

22   she's recently paid $20,000 towards that.  So I understand

23   it's a part of a big picture, a big mosaic and we will brief

24   the issue promptly.  We will be working with your court

25   reporter to try to get some portions of the transcript.

**OFFICIAL TRANSCRIPT**

1          THE COURT:  You know, there are gaps.  You know,

2     there are gaps that I need to see if you actually filled.  I

3     understand the government's position which is, you know,

4     because she knew or should have known about the increased

5     number of weddings, she knew or should have known that the

6     number was incorrect, right, when she put that number on

7     her -- when she put the number on her tax return.

8          MR. MAGNER:  Right.  And the --

9          THE COURT:  I understand -- I mean, I understand the

10    government's position is to make it as simple as possible,

11    but I want to make sure I understand.  Because if I didn't

12    understand it, the jury didn't understand it.

13         MS. BRODNEY:  Just to clarify, should have known is

14    not part of what the government is arguing.

15         THE COURT:  She knew.

16         MS. BRODNEY:  Correct.

17         THE COURT:  Okay.  There are a lot of factors to

18    consider.

19         MR. MAGNER:  I'm not going to restate the whole case,

20    but they're saying that she actually knew and in the midst of

21    the worst emotional crisis of her life, actively refused to

22    put accurate numbers and that's just -- that's just not --

23         THE COURT:  Well, I'll tell you, I mean, one of the

24    things that bothers me, is really that, you know, I hope that

25    court has had an opportunity to put a better system in place

1    because, you know, who's getting what -- who's purchasing

2    weddings licenses, who's actually getting the wedding

3    licenses?  There's no process to note if there is a waiver of

4    fees or not.  You know, there are a lot of bad reasons for

5    putting money on a desk.  I mean, how do you capture that?  I

6    mean, you know, did somebody steal the money?  I mean, it's

7    just out there for anyone.

8         MR. MAGNER:  It's a terrible process, but it's a

9    process that she inherited.

10        THE COURT:  No, I understand that.  But I'm just

11   saying that, you know, that's why I want -- you all put on

12   the case.  You know what your evidence was.  I'm not a jury,

13   you know.  I'm a judge.  So I can look at just the evidence

14   and see whether or not it was sufficient for a reasonable

15   juror to come to the conclusion of guilt beyond a reasonable

16   doubt.  And I don't want to make that decision from the

17   bench.  I don't want to make that decision today.  It isn't

18   fair to anybody.  I think we're all exhausted.  I want to

19   give both parties, the defense and the United States, an

20   opportunity to think about what you presented and present to

21   me the arguments based on the evidence that you are actually

22   able to put into the record.

23        MR. MAGNER:  Yes, ma'am.

24        THE COURT:  And then I will make a -- I will provide

25   you with my written reasons and do the best I can.

**OFFICIAL TRANSCRIPT**

1          MS. BRODNEY:  Thank you, Your Honor.

2          THE COURT:  All right.

3          MR. MAGNER:  Thank you for all your patience, Judge.

4          THE DEFENDANT:  Thank you, Judge.

5          THE COURT:  Thank you all.  You know, please, you

6     know, let me know, the one thing I did not say to them was

7     not to reach out to you because I think I explained the

8     instance where that did occur, you know, and I know there are

9     people from the public.  You do not help by intervening.  It

10    only makes it worse.  And, unfortunately, it makes it worse

11    for the defendant that is presumed innocent.  So, you know, I

12    strongly ask that you do not badger these jurors, do not, you

13    know, try to get them to talk about what happened, because

14    Ms. Trahan deserves a fair trial and if this is tried again,

15    we don't want to be combatting rumor or innuendo.  I do

16    ask -- I do thank the spectators, people who come in quite

17    often.  So I am very grateful that you have been respectful

18    to the court process and expect everyone to continue.  So

19    thank you all again and good luck.

20          THE CASE MANAGER:  All rise.

21                         * * * *

22          (WHEREUPON, the proceedings were adjourned.)

23                         * * * *

24

25

**OFFICIAL TRANSCRIPT**

1                    REPORTER'S CERTIFICATE

2          I, Nichelle N. Wheeler, RMR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
3  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
4  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

5

6                      /s/ Nichelle N. Wheeler
                       Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**OFFICIAL TRANSCRIPT**